UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES EDWARDS,<br><br>                  Petitioner,<br><br>      vs.<br><br>DARWIN LADLAIR,[1] Superintendent,<br>Franklin Correctional Facility,<br><br>                  Respondent. | No. 9:07-cv-00059-JKS<br><br>MEMORANDUM DECISION |

        Petitioner Charles Edwards, a state prisoner appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently in the custody of the New York Department of Correctional Services, incarcerated at the Franklin Correctional Facility.

I. BACKGROUND/PRIOR PROCEEDINGS

        In may 1994 Edwards was convicted, following jury trial, in the Bronx County Supreme Court of three counts of first-degree rape (N.Y. Pen. Law § 130.35(1)), three counts of first-degree rape (N.Y. Pen. Law § 130.35(3)), four counts of first-degree sodomy (N.Y. Pen. Law § 130.50(1)), four counts of first-degree sodomy (N.Y. Pen. Law § 130.50(3)), one count of first-degree sexual abuse (N.Y. Pen. Law § 130.65(1)), and one count of first-degree sexual abuse (N.Y. Pen. Law § 130.65(3). Edwards was also convicted upon a plea of guilty to bail jumping in the first degree. Edwards was sentenced to 14 concurrent terms of eight and one-half to 17 years each for the rape and sodomy charges, concurrent with two concurrent terms of three to six years on the sexual abuse charges. Edwards appealed his conviction of the Appellate Division, First Department, which affirmed his conviction, and the New York Court of Appeals denied leave to appeal. *People v. Edwards*, 681 N.Y.S.2d 227 (N.Y.A.D. 1998), *lv. denied*, 710 N.E.2d 1098 (N.Y. 1999) (Table).[2]

---

        [1] Darwin Ladlair, Superintendent, Franklin Correctional Facility, substituted for Glenn S. Goord, Commissioner, Department of Correctional Services. *See* Order at Docket No. 3; Fed. R. Civ. P. 17(d).

        [2] Edwards also challenged his conviction in a federal habeas proceeding in the Southern District of New York, which denied his petition. *Edwards v. Mazzuca*, 2007 WL 2994449 (S.D.N.Y. October 15, 2007), *appeal pending*.

In January 2004, the Attica Time Allowance Committee (TAC) recommended that none of Edwards' 5 years 8 months of good time credit be withheld.  That recommendation was affirmed by the Commissioner's designee.  Subsequently, after his transfer to the Gowanda Correctional Facility, the Gowanda TAC notified Edwards that a hearing would be held to determine whether good time allowance should be withheld for his failure to participate in the Sex Offender Counseling Program ("SOCP").  Edwards appeared before the Gowanda TAC and, after according Edwards an opportunity to be heard, found that he had, in fact, refused to participate in the SOCP and recommended withholding all 5 years 8 months of Edwards' available good time, subject to reconsideration when he completed the SCOP.  The Gowanda Superintendent confirmed the TAC decision, and on March 8, 2004, the decision was affirmed by the Commissioner's designee.

On April 21, 2004, Edwards filed a petition under article 78, N.Y. Civil Practice Law and Rules, in the Albany County Supreme Court challenging the decision to withhold his good time allowance, which the Albany County Court dismissed.  Edwards timely appealed to the Appellate Division, Third Department, which affirmed the dismissal on February 16, 2006, and the New York Court of Appeals denied leave to appeal on September 14, 2006, and reconsideration on December 21, 2006.  *Matter of Edwards v. Goord*, 808 N.Y.S.2d 841 (N.Y.A.D), *lv. denied*, 822 N.E.2d 1173 (N.Y.) (Table), *reargument denied*, 860 N.E.2d 993 (N.Y. 2006) (Table).

Edwards timely filed his petition in this Court on January 8, 2007.

## II.  STANDARD OF REVIEW

Because Edwards filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this

standard, this Court reviews the last reasoned decision by the state court. *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000). State court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003). In that situation, conclusions of law and mixed questions of fact and law are reviewed *de novo*. *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005). Where there is no reasoned decision of the state court addressing the ground or grounds raised by the Petitioner on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it. *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). It is also presumed that the state court knew and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

### III.  GROUNDS RAISED/DEFENSES

Edwards states a single ground, to wit: that the rescission of his good time violated his due process and equal protection rights, specifically his First, Fifth, and Fourteenth Amendment rights. He seeks restoration of his 5 years and 8 months of good time credit and immediate release from prison. Edwards raises two grounds founded upon federal rights: (1) compelled participation in the SCOP violates his Fifth Amendment right against self incrimination; and (2)

rescission of his previously credited good time violated due process.[3]  Respondent concedes that the grounds raised were exhausted in Edwards's state court article 78 proceeding.

## IV.  DISCUSSION

In rejecting Edwards's arguments, the Appellate Division held (808 N.Y.S.2d at 842):

> It is well established that "[g]ood behavior allowances are in the nature of a privilege ... and no inmate has the right to demand or to require that any good behavior allowance be granted to him [or her]" (7 NYCRR 260.2).  The determination to withhold a good time allowance is discretionary in nature and, as long as it is made in accordance with the law, it will not be subject to judicial review (*see* Correction Law § 803 [4]; *Matter of Thomas v. Time Allowance Comm. at Arthur Kill Correctional Facility,* 4 A.D.3d 637, 638, 771 N.Y.S.2d 739 [2004] ).  Here, the record evidence demonstrates that petitioner, on more than one occasion, refused to participate in a recommended sex offender program.  Such refusals provided a rational basis for the withholding of petitioner's good time allowance (*see* 7 NYCRR 260.3[b]; *Matter of McPherson v. Goord,* 17 A.D.3d 750, 751, 793 N.Y.S.2d 230 [2005], *lv. denied* 5 N.Y.3d 709, 803 N.Y.S.2d 30, 836 N.E.2d 1153 [2005]; *Matter of Bolster v. Goord,* 300 A.D.2d 711, 713, 752 N.Y.S.2d 403 [2002] ).  Petitioner's remaining contentions, as set forth in his pro se brief, have been examined and found to be lacking in merit.

There is no constitutional or inherent right of a convicted person to be conditionally released on parole before expiration of a sentence.  *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).  The Second Circuit has specifically held that New York's parole scheme does not create a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  *See Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *see also Davis v. Dennison*, 219 Fed.Appx. 68, 70 (2d Cir. 2007).  Although the Second Circuit has not expressly reached the issue before this Court, the grant of good time credits, it appears to the Court that the rationale underpinning *Barna* is equally applicable to that subject.  The statutory basis for and regulations implementing the good time scheme are substantially similar to those of the parole scheme.

---

[3] With respect to his First Amendment claim, Edwards does not address that matter nor does he articulate the basis upon which his First Amendment rights may have been violated in either his petition or his traverse. To the extent that Edwards raises claims based upon the misinterpretation or misapplication of state law, those issues are, as noted above, beyond the purview of this Court in a federal habeas proceeding.  Accordingly, the Court does not address those claims.

N.Y. Corrections Law § 803 "Good behavior allowances against determinate and indeterminate sentences," provides (emphasis added):

> 1. (a) Every person confined in an institution of the department or a facility in the department of mental hygiene serving an indeterminate or determinate sentence of imprisonment, except a person serving a sentence with a maximum term of life imprisonment, *may receive* time allowance against the term or maximum term of his sentence imposed by the court. Such allowances *may be granted* for good behavior and efficient and willing performance of duties assigned or progress and *achievement in an assigned treatment program*, and *may be withheld*, forfeited or canceled in whole or in part for bad behavior, violation of institutional rules or *failure to perform properly in the duties or program* assigned.
>
> (b) A person serving an indeterminate sentence of imprisonment *may receive* time allowance against the maximum term of his sentence not to exceed one-third of the maximum term imposed by the court.

Section 803(3) confers on the commissioner of correctional services the authority to promulgate rules and regulations for granting, withholding, forfeiture, cancellation, and restoration of good time, as well as establishing committees within each correctional facility. Section 803(4) provides:

> No person shall have the right to demand or require the allowances authorized by this section. The decision of the commissioner of correctional services as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law.

The regulations promulgated by the commissioner parrot this provision: "Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him." 7 N.Y. Comp. Codes & Regs. § 260.2.

The commissioner's regulations also make clear that the grant of a good time allowance is contingent upon further compliance with the requirements for good time allowances. 7 N.Y. Comp. Codes & Regs. § 262.1(b) ("The grant of the good behavior allowance shall be contingent on the inmate's continued good behavior, efficient and willing performance of duties assigned, and progress and achievement in an assigned treatment program."). The regulations further provide for the reconsideration of the amount of good time to be granted for acts in disregard of the statutory criteria for good behavior allowances, *e.g.*, achievement in assigned treatment programs. 7 N.Y. Comp. Codes & Regs. § 263.2(b).

Like the parole provisions in *Barna*, granting or withholding of good time is a discretionary matter subject to the prisoner meeting and maintaining the requirements for eligibility. Thus, the inescapable conclusion is that, like the New York parole scheme, the wholly discretionary good time allowance scheme does not "create a legitimate expectancy" of obtaining an earlier release. *Barna*, 239 F.3d at 171.

Even if the Court were to reach the merits on Petitioner's due process claim, Petitioner would not prevail. The New York scheme provides for a review of the inmate's file, a personal interview by the allowance committee, and a statement of its reasons for denying good time credits.[4] This meets the requirements of due process. *See Greenholtz*, 442 U.S. at 15.

Edwards argues that because he continues to maintain he is innocent and his guilt has yet to be finally established, his participation in the SOCP would, because it requires that he discuss his criminal acts, result in his incriminating himself.[5] Edwards's Fifth Amendment claim fails for two reasons.[6] First, the Fifth Amendment's Self-Incrimination Clause is applicable to the states by reason of its incorporation into the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). Because Edwards has no "liberty interest in [a good time allowance] ... the protections of the Due Process Clause are inapplicable." *Barna*, 239 F.3d at 171.

More importantly, however, this Court cannot say that the decision of the Appellate Division upholding denial of the Edwards's claims was contrary to, or an unreasonable application of, Federal law as established by the Supreme Court. 28 U.S.C. § 2254(d)(1). The Supreme Court, in a civil rights action brought under 42 U.S.C. § 1983, held in a plurality decision that withholding prison privileges for refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not

---

[4] 7 N.Y. Comp. Codes & Regs. §§ 261.3; 261.4.

[5] Edwards ignores the fact that he was convicted by a jury and his conviction upheld by the New York appellate courts. His only pending action challenging his conviction is his federal habeas petition now pending on appeal before the Second Circuit. See note 2, page 1.

[6] The Appellate Division summarily denied his Fifth Amendment claim without opinion. Consequently, this Court must determine *de novo* on the record whether the denial was contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court.

to incriminate oneself under the Fifth Amendment. *McKune v. Lile*, 536 U.S. 24, 35–47 (2002). The Court is not unmindful of the fact that in *McKune* the Supreme Court noted the Kansas program upheld in that case did not affect a prisoner's eligibility for good-time credits or parole. 536 U.S. at 38 (dictum). Clearly established law, as used in § 2254(d)(1), refers to the holdings, as opposed to the *dicta*, of the decisions of the Supreme Court as of the time of the relevant state-court action. *Williams v. Taylor*, 519 U.S. 362, 412 (2000). The Court also notes that no decision of the Supreme Court provides a clear answer to the question of whether a state may withhold good time credits, or deny parole, based upon the refusal of a prisoner to participate in a sex offender treatment program on Fifth Amendment grounds.[7]

What *McKune* clearly held is that withholding of privileges from prisoners, whether automatic or discretionary, for a failure to discuss his self-incriminating criminal history in sex offender treatment programs, whether such programs are voluntary or compulsory, does not, *ipso facto*, constitute compulsory self-incrimination within the scope of the Fifth Amendment's self-incrimination proscription. The test, as articulated in *McKune*, depends upon the severity of the consequences of the choice made by the prisoner not to participate and discuss his crimes. 536 U.S. at 44–45 (plurality), 48–50 (O'Connor, J. concurring). Unfortunately, the Supreme Court has not provided a bright-line of demarcation above which the severity of the consequences constitutes compulsion.

The Supreme Court has upheld against Fifth Amendment compulsory self-incrimination claims the imposition of sanctions or penalties for a failure to testify in several instances where the adverse consequence of making that choice was much greater than that imposed on Edwards in this case. *Ohio Adult Parole Authority v. Woodward*, 523 U.S. 272 (1998) (allowing adverse inferences to be drawn from a silence of a death-row inmate in the context of a clemency

---

[7] The Court is also not unmindful of the unpublished decision in *Donhauser v. Goord*, 181 Fed.Appx. 11 (2d Cir. 2006), a civil rights action under 42 U.S.C. § 1983, in which the Second Circuit remanded the case to the district court for clarification, apparently agreeing, *sub silentio*, that the allegation DOCS automatically denied good time credits as a direct result of a prisoner's refusal to participate in the sex offenders' counseling program gave rise to a viable claim under the Fifth Amendment. This does not, however, change the analysis in this case—in a § 2254 action, the Court is concerned with the law as established by the Supreme Court, not the Court of Appeals for the Second Circuit. This Court is, however, bound by decisions of the Second Circuit as to whether the answer to a particular issue has been clearly established by the Supreme Court. That is not present in this case.

hearing); *Baxter v. Palmigiano*, 425 U.S. 308 (1976) (permitting adverse inferences to be drawn from silence at a prison disciplinary hearing); *Minnesota v. Murphy*, 465 U.S. 420 (1984) (parolee's admission of guilt of rape and murder to a probation officer where a condition of parole required him to be truthful with the probation officer); *McGautha v. California*, 402 U.S. 183 (1971) (use of statements made to mitigate responsibility and avoid the death penalty against him as evidence of guilt); *see also Brady v. Maryland*, 397 U.S. 742 (1970) (admission of guilt as part of a plea bargain).

In two recent decisions the Supreme Court has expressly indicated that the phrase "clearly established" is to be narrowly, not broadly, applied. *Wright v. Van Patten*, 552 U.S. ___, 128 S.Ct. 743 (2008); *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649 (2006). "Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. at ___, 128 S.Ct. at 747, quoting from *Musladin*, 549 U.S. at ___, 127 S.Ct. at 654 (internal quotation marks and alterations omitted). Here, given the legitimate penological objective of the SCOP (rehabilitation), the fact that the right to a good time allowance is a discretionary privilege, the degree of severity of the sanction as measured against existing Supreme Court precedent as to the upper limit, and the lack of any controlling precedent on point, this Court cannot say that the no reasonable jurist could find that there was no compulsion in this case. In the case before this Court, recognizing that the decision of the Appellate Division is not contrary to any law clearly established by the Supreme Court,[8] collateral relief in the form of a habeas writ is unjustified. *See id*.

Edwards is not entitled to relief on the ground that participation in the SCOP compelled him to be a witness against himself in violation of the Fifth Amendment.

## V.  CONCLUSION AND ORDER

Petitioner is not entitled to relief on any of the grounds raised in his petition.

---

[8] As noted in *McKune*, no single case exists where the Supreme Court has held that the denial of a privilege to a prisoner for refusal to participate in a rehabilitation program amounts to unconstitutional compulsion. 536 U.S. at 40.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

The Court finds that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly,

**IT IS FURTHER ORDERED THAT**, the Court will grant a Certificate of Appealability on the issues:

1. Whether the New York good time allowance scheme creates a sufficient liberty interest to invoke the protection of the Due Process Clause of the Fourteenth Amendment; and

2. Whether participation in the sex offender counseling program and its application in the process of granting good time credits constitutes sufficient compulsion to encumber the constitutional right not to incriminate oneself under the Fifth Amendment under clearly established Federal law as determined by the Supreme Court.

Dated:  August 4, 2008.

s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge